The Honorable Judges of the United States Court of Appeals for the Fourth Circuit. Please be seated. We will pick up now with our third case, United States v. Eric Johnson. When you're ready. May it please the Court, Sylvia Sacco for Eric Johnson. This case is about whether police officers conduct a Fourth Amendment search when they bring a drug sniffing dog to someone's apartment door at 3 a.m. to sniff her contraband inside. They do under both the reasonable expectation of privacy approach and the physical intrusion approach. First, as the Seventh Circuit held in Whitaker, the sniff is a search because the drug detection dog is a super sensitive tool for detecting objects inside the home that police couldn't otherwise detect. As Justice Kagan explained in her Jardine's concurrence, Kilo establishes that residents have an expectation that police tools not in general use will not be directed at their homes. Counsel, can I just, that was a concurrence, and obviously if the Supreme Court or a Supreme Court Justice wants to sort of cut back on police and Kabbalists, all the cases saying that a dog sniff is sort of per se not a search because it can only uncover contraband in which you don't have a privacy interest. I could see how following Justice Kagan's lead, the Supreme Court may someday decide to cut back on those precedent, but I'm not sure we can do that as a lower court. That's my concern. It wouldn't be cutting back on the Kabbalist and police precedent. Police and Kabbalists do not involve the home. It would involve pretty radically, I mean, it's characteristically Justice Kagan. It's very catchy. It reads very well, but that's a pretty radical reconceptualization of the ratio descendi of police and Kabbalists. It's like let's restate the whole theory in which those cases were decided. I don't think so, and I think... No, because those cases say this is literally not a Fourth Amendment event. It is not a search, and once it's not a search, the Fourth Amendment doesn't care. The Fourth Amendment doesn't regulate police conduct. The Fourth Amendment regulates searches and seizures, and once you say that something is not a search, you can stop reading, right? I know, you're going to come back and say the home. But the Fourth Amendment doesn't regulate police conduct relating to the home. It relates searches and seizures of a person's home, person, or effects. So once I say it's not a search, the Fourth Amendment is done, right? So I have a couple of responses to, again, the idea that this court would have to be cutting back on Kabbalists and the police line of cases. I'd point the court to this court's decision in Hill, which says at page 251, place obviously did not sanction the indiscriminate blanket use of trained dogs in all contexts. Well, no, it doesn't, because it says once you've pulled someone over by the side of the road, which is a stop, a search, I guess a seizure, or search, it's a seizure, you can't detain someone indefinitely just to go get your drug-sniffing dog because that's unreasonably prolonging what is already conceded to have been a seizure, which is pulling the car over. But here there's a question of whether there's a seizure or search at all. That's right. The question is whether there is a search. But again, I know it sounds like Justice Kagan's concurrence in Jardines will only get me so far, but I would point the court to footnote 1 where Justice Kagan says that the Supreme Court has held over and over again that people's expectations of privacy are much lower in their cars than in their homes. But not their suitcases. That's the other thing that I find kind of concerning. I mean, you have a very high level of privacy in your luggage, and that's what was going on in place. And I don't think the court has ever said, oh, that's no big deal, I'll just open up your luggage in the middle of an airport and let everyone see what's inside. Again, place did not involve the home. Place did involve luggage, and I do think people have an expectation of privacy in their luggage. But whether it's reasonable when that luggage is in an airport I think is the issue in place in Caballos. I'd also point the court to the Caballos decision itself at page 407. It says the question presented is narrow. It says nothing about the home. It's about whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug detection dog to sniff a vehicle during a legitimate traffic stop. I haven't found any published Fourth Circuit decision applying Caballos to justify a canine sniff at the home. And I'd also point out that the Supreme Court has refused repeatedly to take search doctrines that originate in a context like car searches and to transplant it and sort of plop it at the home and say this is okay here too. I think Conellia is a great example of that where the courts of the community caretaking exception couldn't be just extended to allow warrantless searches at the home. Do you also sort of make a property argument here too? So you started by saying there are two lines and not to cut you off from the one that seems rather uphill. Can you sort of help me understand what your argument is under Jardines? Are you arguing that the hallway is property that he had an ownership interest, a right to exclude? Help me understand how I'm getting there. Sure. Yes, we are making a physical intrusion-based argument. The point is that the sniff physically intruded in the protected area immediately surrounding Mr. Johnson's home without license to do so. When you say that, you sort of seem to be suggesting like a curtilage kind of idea. Yes. But I have always thought of and it seems like the cases seem to agree that curtilage is like necessarily like a subset of your property, right? Like you don't get curtilage because of proximity. You get curtilage because it is part of your property that's distinct from like an open field, right? The curtilage is the description of your property that's close as opposed to the description of your property that's not close. But it's a subset of property, right? And so what I have a hard time with in the hallway example is how the hallway is something where Mr. Johnson? Mr. Johnson, yes. I don't mean ownership, right? That's different. It's apartments. I get that. But you have to have some property interest, sort of a right to exclude. So I don't read Jardines or Collins to be requiring a sort of formal property analysis in that sense. The language that the court uses in Jardines is that the curtilage is the constitutionally protected area immediately surrounding and associated with the home, that it's intimately linked physically and psychologically. But if you take the doctrine from the start, I mean it starts with Oliver, which says you may have a right to exclude from this property, but it's so far away from your house. It's more like an open field, so it doesn't matter. It's not a Fourth Amendment violation for the police to intrude on it. And then in Dunn, they're cutting back on that, and they're saying, okay, okay, we said open fields, even if you own them and have the right to exclude, are not protected by the Fourth Amendment. But if it's a land right around your home, that's different. Not only do you have the right to exclude, but it is also home-like. And so I think I have the same question as Judge Richards, and I don't see how we can just plop the Dunn factors down where there's no right to exclude. It's as though the unstated most important factor, it's as though what Dunn is saying is most important, obviously, you need the right to exclude. And then within that category, we will say that an intrusion onto this property is a Fourth Amendment intrusion, if you can also show that it's close to your house and it's an extension of the activities that you do in the home. So a couple points. Dunn, I don't see a factor in there that says the right to exclude. No, they don't say that. But I'm saying that's the unstated premise, because in Dunn, that guy owned the property. I guess I don't necessarily agree that that's the unstated premise. And again, I'd point the court to Jardines and Collins, which don't even cite Dunn or go through the factors. Because it's obvious that that is Jardines' porch. There's no allegation, like, that's not his house. I don't know what he's complaining about. I do think probably in Jardines it was his home. But again, I'd say that the bottom line takeaway, as I read Jardines and Collins, is that the constitutionally protected area immediately surrounding and associated with the home. So you think if you have, like, a townhouse and the front door opens immediately onto the sidewalk, that sidewalk, that public sidewalk, that's curtilage, and the police can't walk in it? I do recognize that there could be tough lines to draw about where does the curtilage start, where does it end, is it the sidewalk? I don't think that's a question that the court really has to answer here. Here we're talking about the threshold of the door. I think that, at bare minimum... The threshold of his door is the equivalent of a townhouse that opens directly onto a sidewalk, right? In your hypothetical, yes. And I do think in that situation, if there is a drug dog sniffing right at the threshold of the door, that space is curtilage. It's immediately surrounding. It just seems a little bit bizarre to say that we would, applying a property-based approach, say there is a Fourth Amendment violation because the police have entered somewhere that is not, in fact, your property. That just seems weird. I disagree again. Again, just going back to... We're calling it a property-based approach. But the police... How did the police violate my Fourth Amendment rights? Well, they did so by entering a place that I don't have any sort of property-based interest in. So I think there is... ..an interest in the space just outside your home. But that sounds like cats. That doesn't sound like a property. That sounds like a reasonable expectation of privacy approach, not a property approach. I do think the approaches generally point in the same direction. But I would point... I would point the court to the Texas Court of Criminal Appeals decision in Rendon, 477 Southwest 3rd 805, and the Supreme Court of Illinois in Bonilla that both said, you know, at minimum, the threshold of the door is curtilage. The idea that the home is sacrosanct and it's at the core of the Fourth Amendment, there's the space right around it, immediately... The Texas case... The Texas one, is that the, like, duplex or quadplex or whatever it is? So there wasn't a question there whether there was a property interest, right? Like, if I live in a duplex, and so Judge Harris and I are right next door, I have a right to exclude people from our shared porch. I don't have a right to exclude Judge Harris, right? But I've got a right to keep you off of that porch if I am so inclined. And so that... I totally understand that in the Texas case, and I think it's also true in Illinois, that that was a place that was a joint ownership, like a joint right to exclude. That seems, like, totally reasonable. But I don't... I haven't taken you so far to suggest that that's what you have, that Mr. Johnson had a right to exclude people from the hallway. I don't... Or in Judge Harris's earlier hypothetical, that the row house right on the sidewalk has a right to exclude people from the sidewalk. So I'm not suggesting that Mr. Johnson had the ability to exclude people from the hallway, but I do think the area immediately outside his apartment was a protected space, and we can look at the picture at JA-106. The door was set back from the hall. There were two layers of security into the building. This is JA-363 and 404, and so it was... It is a protected space. Well, but can I ask... You said two layers of security. Two layers... The police didn't break in, right? They did not. Who let them in? The management let them in. Does the management have the right to let people into the shared public hallway of an apartment building? I think they're able to do that, but they can't diminish the residents' Fourth Amendment rights. Oh, it seems like they massively diminished the residents' Fourth Amendment rights because they have unfettered ability... Not only that, does your client have the right to prevent other people, other tenants, from letting people into the shared public hallway? Not sure that he has that particular right in his lease, but I do think, again, with the reasonable expectation of privacy and the norms that we're talking about in the physical intrusion test, the Supreme Court in Jardine said that no one has the right to bring a trained police dog to your home just outside in order to sniff for contraband inside. Let me give you this analogy about the building manager. So I own my house with the person I'm married to. I have a right to prevent people from coming into my house. I have a right to prevent a drug-sniffing dog from standing on my front porch because my front porch is clearly part of my cartilage. But my spouse has the ability to let people in, and if she lets people in, I don't have any Fourth Amendment right to complain if my spouse lets people in. So why isn't the building manager here analogous to my spouse? I think, again, we're looking at the perspective of Mr. Johnson and his home and the area immediately surrounding it. Let's just posit that I could imagine being very, very cross if my spouse let a drug-sniffing dog into my house, and yet... And why would you be cross about that? I don't know. We talked about the Fifth Amendment earlier. I don't know whether now's not the time, but maybe... Or a police officer generally. I might be very cross if I learn that my spouse let the police into our house because I don't want blah, blah, blah. Or a friend of hers that I don't like. I guess my point is I could imagine being very, very cross at my shared tenant letting a variety of people into our house for a variety of reasons, but as a Fourth Amendment matter, I have no right to object to any of it. I guess there might be a difference, though, between people living in a space together and then this apartment home where Mr. Johnson... It's not like the building management were sharing that particular space, but I also want to point out that letting officers... But you do agree, in the hypothetical we got here, if the landlord, who has the key, let the police officer into Mr. Johnson's apartment, that would be a Fourth Amendment violation, right? It would, yes. But doesn't that really sort of show us that there are property interests that Mr. Johnson has, which is, like, on the other side of that door, right, that the landlord can't get into and can't authorize law enforcement to get into absent some unusual circumstances, right? That would be a search, even though the landlord can do that. And the landlord's the owner, but Mr. Johnson has the right to exclude the landlord and police from inside the door, but not outside the door, right? That line seems to be precisely where we say he's got a Fourth Amendment interest in his apartment, but not the hallway. Well, I do think it follows from Jardine's and Collins' and the discussion about the area immediately outside the home. That area is sacrosanct because the home itself is sacrosanct under the Fourth Amendment. I'd also say letting officers conduct warrantless canine sniffs at apartment doors, as long as building management lets them in, sets a sweeping and very troubling precedent where police officers can basically gain access to a building. I see my time is up. If I could finish. Police officers could gain access to an apartment complex and basically take a drug-sniffing dog up and down the hall, every single unit, sniffing every single door until it finally alerts, and that's exactly what happened in the case from the Connecticut Supreme Court, Kono. And thank you. Thank you very much.  Good morning, Your Honors. May it please the Court, a day at and relay for the United States. I'd like to start here. Well, obviously, for the reasons for which I will discuss here, I respectfully ask that you affirm the lower court's decision. Following on with Judge Harris's point, I would agree that, indeed, overturning the lower court's decision would, in a way, minimize a place in Caballos. Specifically, the main points identified in those cases was, one, there really is no right to privacy in contraband. Here we have a drug-sniffing dog trained. The party stipulated that it was trained as such only to sniff contraband, and that's at JA-373. And the cases are very clear that there is, in fact, no right to privacy in contraband. And, two, Can I jump off of this and go back to the property question? What happens in a hypothetical where the police, in this case, except the landlord doesn't let them in, right? So the police officer with the dog stands outside the apartment until somebody walks in. They grab the door and walk in behind them, as people want to do, and then walks the dog around, but without consent or agreement or permission by the landlord. Is that a problem, a Fourth Amendment problem, when the dog alerts at Mr. Johnson's door? I would say, Your Honor, in this case, it's not just a matter of building management, letting the police officers in. Yeah, don't fight the hypothetical. Actually, just go with the hypothetical, right? So I understand that my hypothetical is meaningfully distinct from the facts of the case. I'm positing that on the front end, right? I'm positing management doesn't know or authorize it, right? But otherwise, we've got what we've got, right? And so I guess what I'm trying to understand from the government's perspective is, in your view, is there no search that's taken place? Or would Mr. Johnson simply lack standing to assert any Fourth Amendment violation? Maybe the landlord might have a Fourth Amendment violation because he has the right to exclude from the hallways, but maybe Mr. Johnson lacks the standing to assert it? Or is even in that instance, there's no search that has occurred? There are two ways of thinking about that. They sort of end up at the same place, but I'm curious from the government's perspective, which one you think is the right way to think about it. Even if the police officers weren't allowed into the location, the government would still say that a search has not occurred, and that's because of a number of factors here. Here we have a large complex building, over 100 units identified in the record. We have multiple floors. I believe there are four floors in this apartment building. The apartment 201 in this instance was specifically right by an elevator, which was used by guests, cleaners, apartment management, other individuals who live in the apartment. Okay, but imagine that the dogs go into the hallway, and actually sitting, like, on the edge of the hallway is a kilo of cocaine, and the dog alerts on the kilo, and they charge the landlord. Because as it turns out, the landlord's a drug dealer, and he happens to keep his drugs in the hallway. Probably not going to be a drug dealer for long, but bear with me. And the landlord's, you know, the person that owns the building says, These are my hallways. Like, I own them. I give license to some folks to come and go, but I didn't give the police officer license to come and go. Don't you think the owner of the apartment complex could assert a Fourth Amendment violation for the drug dog that found the kilo in the hallway? And that may be so. And as your honors have identified, you know, the property side of the analysis may also include who owns the property itself. And there may be some legal formation issues there. I mean, I don't know who the owner of a particular apartment building may be and how you associate the drugs to a particular individual. However, I don't necessarily disagree with your honor in that the individual who has the ability to exclude others from the location may, in fact, be the one with the Fourth Amendment right in that instance. Can I ask you to just sort of address where your colleague left off? If you are right, is there anything that prevents the police from coming into the building? Let's pause it with the acquiescence of the landlord. You know, a hundred-unit building and just marching the dogs through the hallways to see if they smell anything? I'm sorry. Is there anything that would be problematic about that? Or if you are right, does it follow that if the police want to, they can just have a day where they all fan out into different apartment buildings with their dogs and see if anything turns up? I can't think of an example in which there's an apartment building, certainly one of this size, but an apartment building with common hallways, elevators, others. So it's fine. That's the cost of our property-based approach. If the police want to do like a drug-sniffing dog dragnet and just fan out across the city into every apartment building, no reasonable suspicion, nothing like that, that's all fine. Your Honor, I wouldn't characterize it as a cost. However, under placing cabalists, as long as the drug-sniffing dog indeed is only able to sniff drugs and isn't looking to non-contraband, and then on the property side of the analysis, you know, we've gone over the ______. That's also true at like a music festival or anything else, right, that like if you're in that setting, then, you know, they could bring the drug dogs there too. Indeed. On the property side of the analysis, if the ______. Or explosive dogs, right, would be the same inquiry. Do the dogs explode or do they sniff? Well, if they're not good at sniffing, then they end up exploding. I would agree with all of those examples, Your Honor. So what rule do you want us to adopt? We have to define curtilage. For purposes of this case, how would you define curtilage? I'd like Your Honors to simply follow Makel. In Makel, Makel is on all fours with this case. It is indeed an unpublished decision. I'd like Your Honors to turn that into a published decision. Well, but we don't ______. Excuse me. No, finish. And indeed, the curtilage is simply the four corners of an apartment. The common hallways, an individual who lives in any particular apartment doesn't have the right to exclude anyone from those locations. Indeed, as I've said before, guests of other apartments are able to come and go. So is that the rule that you would have us adopt, that you have to have a right to exclude in order to have a sufficient property interest for something to arguably be curtilage? Specifically, again, and if the two statements were contradictory to one another, in Makel, it makes it very clear, particularly on both sides of the analysis, but as we're speaking to the property analysis here, Makel explicitly states, and I believe this is a quote, the common hallway of an apartment building, including the area in front of the door, was not in the curtilage of his apartment. I'd like this Court to simply take that language, put it into a published decision, adopt that as the rule, and have that be the rule for the Fourth Circuit going forward. But let's just say if it's a published decision, we're going to need another sentence saying why that is so. So, okay, the hallway outside the apartment is not curtilage because? One, and as I've mentioned before, one, there is no individual in any particular apartment that can exclude a visitor, a guest, cleaning staff, and in many instances, members of the public from entering into those common spaces. There is no part of the privacy of your life that extends into a common hallway when you're living in an apartment building. When you have an apartment building, particularly one of this size, is more akin to a hotel. Can I ask a hypothetical from a case that we decided called Jackson from 2013? And as I take the hypothetical, there's like an apartment, and the apartment is on the ground floor, and the ground floor apartment has a patio, which I took to be like sort of a poured concrete pad. And the court there assumed, without deciding, that that patio was part of the apartment's curtilage. Do you agree with that? It then went on to decide that once you got off of the patio, there was some grass apparently, and that grass was not part of the curtilage because there was no—it doesn't exactly explain why, but in our hypothetical, it's because they had no right to exclude. But they did have a right to exclude from the patio, right? Like if somebody else showed up and wanted to put their barbecue grill there, they could be like, no, you can't barbecue grill on my patio. Do you agree in that sort of a setting, if you had an apartment on the ground floor with a patio, that that patio would be part of the curtilage? That's exactly what we would think of as being the curtilage? I do agree, Your Honor. An individual on a patio such as that may have a table out there, may have a couch out there and other items that are theirs, similar to maybe you have a balcony in your apartment, right? I also would agree there. However, and on top of that— is the reason simply that you have the right to exclude people from it, or is there something else? I'm trying to, I think, maybe get at the same question that Judge Harris is, which is when we say in converse—in opposition to what she said earlier, the hallway is not because the patio is the curtilage of that apartment because of what? One, it is indeed, again, the right to exclude. On the flip side, maybe with the same coin, the apartment management can't give permission for an individual to go into the balcony of your apartment or go into the patio area of your apartment. The two of those, I think, are critically important facts, not just for this case but other cases going forward. We say in Jackson that we are identifying the boundary between the property that was conveyed by the lease and then the common area. So I think the idea is that the patio is part of your lease. The enjoyment of that patio comes along with your lease. So I do think we ground it in Jackson in that kind of property idea. Can I ask you a question? What if—so we know that, on your understanding, the area in front of Mr. Johnson's apartment door is not curtilage. Can they just—what if they have like a kind of sluggish drug-sniffing dog and they need to stand out there for like five hours just sniffing all around the seams and it hasn't alerted yet? How long can they stand out there? Is there any property-based right to any understanding that would allow a court to draw a line and say, look, it might not be curtilage, you don't have the right to exclude, but they're not allowed to just stand outside your door all night. And maybe, given that Your Honor has identified maybe a lease agreement as a way in which to look at some of these property issues, in many leases and including in this one, I believe, there's a commentary around individuals can't just stand out in the hallway and have a party all night or for many hours on end. In this case, indeed, I know you've raised a hypothetical, and I hope I'm addressing that, but in this case, indeed, we have a fairly quick search. I can understand if there may be some— I don't understand the lease point, right? Because the lease point, if there's like—imagine there's like an anti-loitering or a noise issue. It seems like those are things the landlord can surely enforce those things, right? But they're not creating a right on behalf of the apartment owner to exclude or apartment leaseholder. That's a right the landlord has, right? So if you're loitering in contravention to your lease agreement, that's as between the landlord and the loiterer. There's not a third-party interest that would allow an apartment leaseholder to exclude somebody for loitering, right? That's correct, Your Honor, and excuse me if I wasn't clear about that. Again, in the instance of apartment buildings, the apartment owner or the management company, the Fourth Amendment right, certainly in the common hallways outside of the apartments themselves, apply to that management company or owner. The right in the common areas, such as the hallway in this instance, doesn't apply put forth to any particular renter or lessee of an apartment itself. So the answer is the police officer—there's no Fourth Amendment problem, at least with the police officer just standing outside the guy's door all night and all day. As long—as in this case where they were allowed authorization to enter into the apartment, and I'd also submit that the private investigator in this case was also given authorization to enter the apartment, I believe, without even making it clear what he wanted to do, then yes, there really is no time limit on which— You'd say it's the same answer, like, you know, could the police officer stand on the sidewalk outside of— if I happen to have a sidewalk at my house, but stand on the sidewalk outside my house. As long as it stayed on the sidewalk, the police officer could in theory conduct surveillance from the sidewalk as long as he wanted to be there with drug dog or whatever it might be. That's correct, Your Honor, and that falls— It's a little different if you're talking about, like, let's just use the Jardines house. Like, so the police officer can stand on the sidewalk some distance from your home and kind of stake your home out as long as he wants. Maybe it's a public sidewalk, but if he's, like, literally right outside your door, I do wonder whether, you know, you have some kind of a right to use and quiet enjoyment or something like that, where actually, no, he can't just stand right in front of your apartment door, and so you have to, like, walk past him, you know, under his arm every morning. Like, at some point, isn't there some kind of common law, traditional thing that's going to come to your rescue? Because if there's not, I start to get really troubled about what we're saying about apartment dwellers. And there may be a contractual right as identified in the lease agreement or otherwise. However, still, nonetheless, there's still no Fourth Amendment constitutional right, and there is some distinction there, and this is why maybe I had a little bit of consternation with fully going forward or agreeing with the lease as kind of the identification of your Fourth Amendment rights. And under that instance, there may be a civil— Oh, so you think that lease might give you more rights than you actually have under the Fourth Amendment? Or less. I mean, those are separate issues that may be brought in civil litigation. For Fourth Amendment purposes, you know, Place, Cabalas, Makel, Fitzgerald, these cases have made it fairly clear, you know— In what way—can you go back to that point? In what way—we don't typically think of, like—in what way would a lease give you more rights? Like, how could that—I mean, I understand in the example of, like, the patio, right? The lease is included in the property that I'm leasing. Is there another way that the lease gives you more—is there another way that you can think of that the lease— I mean, I understand the patio example, and in that sense, it's giving you more property interest than you had. But is there a way that, independent of that, the lease could expand your—the Fourth Amendment rights that you have? No, and forgive me if there was any misunderstanding there. The lease—again, just to be clear, the lease may have impact and effects with respect to, you know, civil litigation or some sort of civil right. However, you know, I certainly wouldn't submit that the lease has any significant or predominant impact over an individual's Fourth Amendment right in an apartment building such as this one here. Except insofar—I take you to agree. Except insofar, it defines the property that is yours, right? So the lease example that we gave in Jackson, it included the patio. And so if it included the patio, like, that means the lease—in the same way, it's giving you the inside of your apartment, it's giving you that patio too. So the lease could well determine the scope of your protected area, right? The lease certainly informs the Fourth Amendment property side analysis and the privacy side analysis. Certainly, the lease informs that, but it doesn't—it's not determinative, and it certainly—it's certainly not the four corners of your Fourth Amendment right. Right, because it might give me rights against my landlord that I don't have without giving me curtilage, basically. That's correct, yeah. And with that said, we'd ask again that Your Honors affirm the district court decision, and if there are no other questions, thank you. Thank you. Thank you. Your Honors, I'd like to make a couple points. First of all, I didn't hear my friend on the other side articulate any kind of limiting principle. They seem to fully embrace the idea that police can get access into an apartment building if—just as long as management lets them in. They can walk a drug dog up and down every single unit, hundreds of units in Mr. Johnson's building. That kind of rule cannot be squared with what the Supreme Court and this Court have said over and over about how the Fourth Amendment, at its very core, is the home, and how the home is entitled to special protection under the Fourth Amendment. And again, I'd point this Court to the decision in Hill that rejects the idea that police—and in that case, the Court discussed Jeffis, which is essentially the Caballos equivalent, but it rejected the idea that those cases and the logic can be basically authorized indiscriminate dog sniffs. I also want to pick up on a question from Judge Richardson about the music festival. A music festival in a very public setting like that, it's very distinguishable from the home. And I'd also—I want to pick up on the discussion about Jackson. Well, in our case, sort of a question about whether it's distinguishable or not, right? I mean, the question—there's no doubt that, like, one side of the door is the home, right? And that there's no doubt that you cannot go inside the home, right? The landlord can't go. The police can't go. Absent process, right? It seems like to me that's totally fair. And to think that that is protected is absolutely correct. Like, the question that we have is whether the area outside that is part of the home or not. Like, your comments, which I understand where you're trying to go, but you're trying to sort of presume the answer, right? That, like, the area outside the home is the same as the area inside the home. And maybe there are arguments in the sort of reasonable expectation of privacy line of cases there. I understand there. But in the property line, that seems like a really hard line to draw for you. So I still—I don't think it's just all the area outside of the home. In our case, I do think really we're just talking about the threshold. And I don't—I think actually if the court were to say, you know, just look at the lease, what does it say? Those are the four corners of the apartment or whatever it may be. That kind of rule actually seems stricter to me than even the Dunn factors. The Dunn factors don't say, you know, what are the bundle of sticks that the resident has? Do they get to exclude? Do they not? I think also— But that's because Mr. Dunn owned the property. I mean, I just think that the court was able to take for granted in Oliver and then in Dunn that he owned the property. They were trying to figure out which parts of the property he owned were going to be protected under the Fourth Amendment. I agree that it does seem that in those cases the person, the resident, actually did own the property. But again, I don't think this court has limited the analysis in that way. I don't read Jackson to be saying, you know, could the person exclude from this area? And it's done just based on that analysis. But Jackson actually doesn't do anything with that, right? It assumes that the patio is the curtilage, and that didn't matter to its analysis. I think that's the right analysis. I think that assumption was correct, but it's not really sort of holding that because it finds that the trash cans weren't on the patio. That's correct. But again, I do think that is very different from the case here. Recognizing the lease and the property and all of that, we're talking about right out front of someone's home. And again, I don't think that that kind of rule, that a sniff outside an apartment, door, home, can be squared with the Fourth Amendment's special status, or the home's special status in the Fourth Amendment. Excuse me. Thank you. We ask that the court vacate Mr. Johnson's conviction and sentence. Thank you very much. We will come down, greet counsel, and then hear our final case.
judges: Pamela A. Harris, Julius N. Richardson, Toby J. Heytens